

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable W. A. Williamson
Chairman, Committee on Public Health
House of Representatives
Forty-Ninth Legislature
Austin, Texas

Dear Sir:

Opinion No. 0-6415
Re: Constitutionality of House
Bill N . 34, regarding
chiropractic practice.

We have your request for an opinion of the Attorney General, which said request is as follows:

"Pursuant to instructions of the Committee on Public Health, I submit herewith House Bill No. 34 for your opinion as to its constitutionality."

You enclose with the said request a copy of H. B. No. 34, which is returned to you herewith. We thank you for your thoughtfulness in sending same.

The bill about which you inquire, as shown by the caption and contents thereof, defines "chiropractor" and "chiropractic," and is intended to regulate the practice of chiropractic; it provides a source from whence all expenses incurred by provisions of the act shall be paid; it creates a Board of Examiners for the examination and licensing of chiropractors, and prescribes the powers, qualifications and duties of such Examiners; it provides for the registration of chiropractors and for the granting of chiropractors' licenses by reciprocity; it makes provision for the revocation and suspension of chiropractors' licenses, and makes provision for enforcement of the act; it fixes penalties for violations of the act; it purports to give no authority to prescribe or use medicine or surgery in the treatment of human disease; it provides that the use of the title of "chiropractor" and the practice of "chiropractic," as defined in the act, shall not be construed as the practice of medicine; and it prescribes the duties of district clerks with reference to the keeping of certain records.

Section 1 of the said Act specifically defines "chiropractic" as follows:

"Chiropractic is hereby defined to be (a) the employment of objective or subjective means, with ut the use of drugs or surgery, for the purpose of ascertaining the alignment of the vertebrae of the human spine, and (b) the practice of adjusting the vertebrae by hand to correct or remedy any defect or abnormal condition of alignment."

Said Section 1 further provides that "Nothing herein shall be construed to permit chiropractors to treat the human spine for any defect whatsoever in any manner nor to administer or prescribe any drug or physical treatment whatever, unless such chiropractor is a regularly licensed physician or surgeon under the laws of this State."

Said Section 1 defines a "Chiropractor" as follows:

"A chiropractor is a practitioner of chiropractic, as that term is defined in this section."

Section 12 of the Act, among other provisions, requires that candidates for license to become a chiropractor and to practice chiropractic must successfully undergo examinations on "practical, theoretical and physiological chiropractic, and in the anatomy, physiology and pathology of the human spine as applied to chiropractic."

The Act provides, among other things, that those who successfully pass the required examination for license to practice chiropractic, shall be duly licensed thereto, and shall receive certificates testifying to the fact that the holder is duly licensed to practice chiropractic in the State of Texas.

Each person licensed to practice chiropractic, as "chiropractic" is defined in the Act, shall annually pay a registration fee of not more than $15.00 in order to keep in full force and effect his right to practice chiropractic in Texas.

In regard to these matters we observe as follows:

Honorable W. A. Williamson, page 3


Our courts have almost universally held that a law is inoperative, ineffective, void and unenforce able if it is so uncertain in its terms, - so vague in its expression,-that it cannot be understood. Where a statute is so meaning-less in its terms that the real intent of the Legislature in enacting the law is a matter of conjecture, the act is not a valid one. (See State v. Hadle, 41 Tex. 404; Abbott v. Andrews, (Com. of App.) 45 S. W. (2d) 568, reversing 29 S W. (2d) 885; I. & G. N. R. R. Co. v. Mallard, (Comm. of App.) 277 S W. 1051; Hines v. Foreman, (Comm. of App.) 243 S. W. 478; Sanders v. Lowrimore, (Civ. App.) 73 S. W. (2d) 143; Beaumont Traction Co. v. State, 122 S W. 615; Pincus v. State, (Cr. App.) 70 S. W. (2d) 417; Wilson v. State, 123 Cr. R. 415; King v. State, (Cr. App.) 36 S W. (2d) 490; Anderson v. State, 113 Cr. R. 450; Cinadr v. State, 108 Cr. R. 147; Ratcliffe v. State, 106 Cr. R. 37; ex parte Carrigan, 92 Cr R. 309, 244 S W. 604; ex parte Slaughter, 92 Cr. R. 212; Parroccini v. State, 90 Cr. R. 320; Snider v. State, 89 Cr. R 192; Russell v. State, 228 S W. 566; Griffin v. State, 86 Cr. R. 498, 218 S W. 494; Augustine v. State, 41 Cr. R. 59, 96 Am. S R. 765.)


A modification of the above stated doctrine well recognized in law is that one indefinite, or vague, non-understandable provision of a statute will not render the remainder of the statute invalid unless the remainder is tainted with the same vice of uncertainty. (See Tarry Ware-house & Storage Co. v. Price, 76 S. W. (2d) 162, error dis-missed; Texas Employers Insurance Association v. City of Tyler (Civ. App.) 283 S. W. 929; Ex parte Curry, 96 Crim. Rep. 3, 255 S. W. 730.)


But the highest authorities in Texas hold that where a part of a law is invalid, and the invalid part is such an intimate part of the remainder that the remainder can not be separated from it and leave a whole, understand-able law, then the entire law is invalid. This is particular-ly true where the valid part and the invalid part are inter-dependent and non-separable. (See Abbott v. Andrews, (Com. App.) 45 S W. (2d) 568; Galveston, H. & S. A. R. Co. v. Duty, (Com. App.) 277 S W. 1057).


The application of human reason and of well known rules of statutory construction to the subject matter of this opinion inform us that the definitions of "chiropractor" and

of "chiropractic" as contained in the Act under examination, are the cornerstones upon which the whole Act is based; these two definitions are inseparable from the remainder of it, and without them the whole Act becomes instantly meaningless.

Now, an analysis of this bill as submitted to us discloses the following situation will result from its passage, if it should be upheld by the courts:

A citizen will successfully pass the required examination in the prescribed subjects of practical, theoretical and physiological chiropractic, and in the anatomy, physiology and pathology of the human spine as applied to chiropractic. He will then become a licensed "chiropractor" - that is to say, "One who practices chiropractic as chiropractic is defined in the Act." He will duly receive a license from the State of Texas to practice chiropractic; that is to say, he will receive a license from the State to:

(a) "Employ objective or subjective means, without the use of drugs or surgery, for the purpose of ascertaining the alignment of the human spine, and --

(b) He will receive a license from the State of Texas permitting him to practice the adjusting the vertebrae by hand to correct or remedy any defect or abnormal condition of alignment.

Now the chiropractor, thus licensed by the State of Texas, to follow his avocation as above set out, and by the terms of the license empowered to "adjust the vertebrae by hand to correct or remedy any defect or abnormal condition of alignment," will find himself forbidden by another sentence in the same section of the same act, "to treat the human spine for any defect whatever in any manner," and likewise he cannot prescribe or administer any drug or physical treatment whatever unless he is a regularly licensed doctor under the provisions of what is commonly known as the Medical Practice Act.

If he were already a regularly licensed practitioner under the terms of the Medical Practice Act, he would not need the permission to treat, according to the principles of chiropractic or any other healing method of his choice, the mal-adjustment found by him.

So what, then, can the courts, by the application of any recognized rules of statutory construction, find or say was the intent of the Legislature in enacting a law licensing a citizen to do a thing, and then in the same act forbidding him to do it?

We think the provisions of the Bill under examination, in the particulars pointed out, are so vague, confused, non-understandable and contradictory as to be meaningless, and that insomuch as the said provisions pointed out as so tainted are non-severable from the remainder of the Act, the whole Act must fall by reason of this invalid part. We think a law is void which defines an avocation, licenses a citizen to practice that avocation, sets up elaborate machinery for determining his qualifications to practice that avocation, and the forbids him to practice it or a part of it under pains and penalties of the law. For authority for this position we cite you to the cases which have been mentioned hereinabove.

Moreover, should this Bill be reworded so as to obviate the fatal contradictions therein which have been animadverted to above, - should the Act be so reformed as to give the chiropractor in apt words the power and authority and right to do what the said act provides for him being licensed by the State of Texas to do, we are of the opinion it would still be a void act because it would be in violation of the provisions of the Texas Constitution.

Your attention is respectfully invited to the provisions of Article 16, Sec. 31, of the Constitution of Texas, which is as follows:

"The Legislature may pass laws prescribing the qualifications of practitioners of medicine in this State, and to punish persons for malpractice, but no preference shall ever be given by law to any schools of medicine." (Emphasis ours)

The underscored portion of said constitutional provision which we have copied above, means that the practitioners of medicine in Texas, of whatever school, must be admitted to the practice of the profession of medicine through the same gate, and in being admitted to said practice must possess the same qualifications. The Constitution does not

require that these qualifications shall be the same for all schools of medicine.

The Bill in question prescribed different educational qualifications for the practitioners of chiropractic than are those required by law of the other practitioners of the healing art. The Bill does not repeal the requirements now prescribed by law for the other schools. This Bill would therefore, in the face of the express prohibition contained in said Article 16, Section 31, of our Constitution, set up an express preference for one school of medicine over the other schools of medicine.

The word "medicine" as used in the above quoted constitutional provision does not have the narrow meaning of a pill or potion. It has been interpreted and defined by our Court of Criminal Appeals as meaning and embracing the art of healing by whatever scientific or supposedly scientific method. The court said that "the word 'medicine' as used in the constitutional provision referred to (meaning Article 16, Sec. 31, supra) meant the art of preventing, curing or alleviating diseases, and of remedying, as far as possible, results of violence or accident; the court held that "the word 'medicine' meant some thing or some method supposed to possess curative power." (See Ex parte Collins, 57 Cr. Rep. p. 2, opinion by Judge Brooks; affirmed by Supreme Court of United States, 32 S Ct. 286.)

The Legislature does not have the power to amend the above quoted provision of our Constitution by the device of changing the definition of a word used in the Constitution. It is an elemental principle of law that the Constitution of Texas cannot be amended by legislative act.

By reference to the decisions of our courts in cases where chiropractors have been tried for alleged violations of the medical practice act, all of which is judicial history within the knowledge of the Legislature; by reference to the pages of contempporary history, recording present day facts to which the courts cannot close their eyes, by reference to the legislative history of enactments relative to chiropractors, by common knowledge, and by reference to the terms of this Bill itself, we are of the opinion that our courts of last resort will unanimously hold that chiropractic is a scho l of medicine within the meaning of the Constitution. It is certainly so regarded and advertised by its practitioners, champions, friends and adherents as "an art of healing by a scientific method." It claims to be,

Honorable W. A. Williamson, page 7


most certainly, an "art of curing, preventing or alleviating diseases," and it is equally certain that it professes to be a "some thing or some method supposed to possess curative power." It is either described by those terms, or it is not. If it is described by those terms, it falls within the meaning and purview of the quoted constitutional provisions. If it falls without all of said terms and is embraced within none of them, then it has nought to do with public health and the Legislature is without power to regulate it. (See opinion of our Court of Criminal Appeals written by Judge Davidson in the case of Ex parte W B. Halstead, 182 S. W. (2d) 479.

We have given your request for this opinion our most careful consideration, and we hope we have answered fully your inquiry.

We have made no study to ascertain whether the caption is sufficient and hence express no opinion as to this matter.

Very truly yours

ATTORNEY GENERAL OF TEXAS


By               /signed/
George P. Blackburn
Assistant

GPB:AMM:do
ENCLOSURE

APPROVED MAR. 8, 1945
/s/ Grover Sellers
ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion Committee
By /s/ W.J F.
Chairman